IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edmond Gasaway,<br><br>       Petitioner,<br><br>vs.<br><br>Louis W. Winn, Jr ,Warden,<br><br>       Respondent. | No. CV-13-00270-TUC-RCC (CRP)<br><br>**REPORT AND RECOMMENDATION** |

Petitioner Edmond Gasaway,[1] proceeding pro se and confined in the Federal Correctional Institution-Tucson, has filed an Amended Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody. (Doc. 6, Am. Pet.). Respondent has filed a Return and Answer to the Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus and Motion to Dismiss Petition. (Doc. 16, Answer). Petitioner has filed a Response to the Government's Motion to Dismiss Petition. (Doc. 22).

Petitioner is presently serving a 387-month sentence as a result of his conviction obtained in the Eastern District of Texas on March 5, 1997. (Answer at 2 & Doc. 16-1, Attach. 1, Judgment in a Criminal Case).[2] Petitioner was incarcerated at the Federal

---

[1] The docket sheet shows Petitioner's first name as "Edmond." Petitioner has signed his first name as "Edmon" on certain papers filed in this case.

[2] Respondent has provided the Declaration of Catherine Smithers, Legal Assistant, Federal Correctional Institution, Phoenix, Arizona (Doc. 16-1, Ex. A), who has verified as

Correctional Institution at Ray Brook, New York ("FCI Ray Brook"), from January 27, 2011, to March 15, 2013. (Answer at 2, Doc. 16-1, Attach. 4).

This case has been referred to the Magistrate Judge for a Report and Recommendation. (Doc. 9). For the reasons that follow, the Magistrate Judge recommends that the Amended Petition for Writ of Habeas Corpus should be denied.

## I.     The Amended Petition for Writ of Habeas Corpus

Petitioner asserts as grounds in the Amended Petition "misapplication of prohibited act and wrongful taking of good time credits." (Am. Pet. at 4). Petitioner contends that on or about July 5, 2011, his property and legal documents were confiscated by Lt. (Lieutenant) Halladay when Petitioner was incarcerated at FCI Ray Brook. (*Id*. at 4). Several legal documents allegedly were placed in a package, the materials were deemed unauthorized, and Lieutenant Halladay told Petitioner that the unauthorized material needed to be mailed to his chosen destination. (*Id*.). Petitioner contends that Lieutenant Halladay overlooked documents that were unauthorized for inmate possession so Petitioner took corrective action by ridding himself of the property and sending or attempting to send certain materials to his home. (*Id*.). Petitioner asserts that as a result of his complying with Bureau of Prison ("BOP") policy and Lieutenant Halladay's instructions, he was wrongfully sanctioned for a prohibited act of possession of unauthorized material and lost thirteen days good time credits and 180 visiting days. (*Id*. at 5). Petitioner claims that his witness "AW Porter" was not present as indicated by the Discipline Hearing Officer ("DHO") and the outcome of the hearing may have been different had Porter been present. (*Id*.). Petitioner contends that his due process rights were violated, the Incident Report should be expunged, and his good time credits and status should be restored. (*Id*.).

Respondent argues that Petitioner received all the procedural protections to which he was entitled at his discipline hearing, that the action of the DHO is supported by some

---

custodian of records true copies of certain records submitted as Attachments with Respondent's Answer.

- 2 -

evidence, and that the Amended Petition should be denied. (Answer at 7). Respondent does not challenge Petitioner's claim that he exhausted his administrative remedies regarding his allegations. (*Id*. at 3).

## II. Background

### A. BOP Inmate Discipline Program

The BOP inmate discipline program describes certain acts that are prohibited at the prison, classifies their severity as Low, Moderate, High and Greatest, and sets forth available sanctions to be imposed when an inmate commits a prohibited act. 28 C.F.R. §§ 541.1, 541.3 & Tables 1-2.[3] (*See* Answer at 3-4). The discipline process generally starts when a staff member issues an Incident Report to an inmate based on the staff member's observation or reasonable belief that the inmate has committed a prohibited act. 28 C.F.R. § 541.5. The Incident Report describes the incident and the prohibited act and ordinarily is delivered to the inmate within 24 hours of staff becoming aware of the inmate's involvement in the incident. *Id*. Following completion of a staff investigation, the Unit Discipline Committee ("UDC") reviews the Incident Report. 28 C.F.R. § 541.7. The inmate may appear before the UDC at its discretion and may make a statement and present documentary evidence on his behalf. 28 C.F.R. § 541.7(d) & (e). The UDC may find that the inmate committed the prohibited act, it may find that the inmate did not commit the prohibited act, or it may refer the matter to the DHO depending on the seriousness of the prohibited act. 28 C.F.R. § 541.7(a).

If the Incident Report is referred, the DHO conducts a hearing at which the inmate may appear at the DHO's discretion. 28 C.F.R. § 541.8(e)(1). After the hearing, the DHO may find that the inmate committed the charged prohibited act or a similar prohibited act based on the Incident Report, may find that the inmate did not commit the prohibited act, or may refer the incident for further investigation, review and disposition. 28 C.F.R. § 541.8(a).

---

[3] Effective June 20, 2011 and current through March 24, 2016. *See Spotts v. Holt*, No. 3:11-cv-1880, 2015 WL 4219751, at *7 (M.D. Pa. July 10, 2015).

The DHO must be an impartial decision maker who was not involved in the alleged incident as a victim, witness or investigator or who otherwise was not significantly involved in the incident. 28 C.F.R. § 541.8(b). The DHO's findings must be based on "at least some facts and if there is conflicting evidence, on the greater weight of the evidence." 28 C.F.R. § 541.8(f). The DHO provides the inmate with a written copy of the decision. The DHO's decision must include findings on the following issues: (1) whether the inmate was advised of his rights; (2) the evidence relied upon; (3) the DHO's decision; (4) the sanction imposed; and (5) the reason for the sanction. 28 C.F.R. § 541.8(h). The inmate may appeal the DHO's decision through the Administrative Remedy Program. 28 C.F.R. § 541.8(i).

### B.     Inmate Possession of Alleged Fraudulent Lien Documents

Following the enactment of the Court Security Improvement Act of 2007, 18 U.S.C. §§ 119 and 1521,[4] the BOP has implemented provisions prohibiting inmates from possessing certain documents related to the filing of fraudulent liens against federal officials. (Doc. 16-1, Attach. 5, BOP Mem.). Under BOP policy, inmates are prohibited from possessing documents or materials that further criminal or fraudulent activity. (*Id.*). Uniform Commercial Code ("UCC") filings, lien documents, and documents containing personal information regarding certain persons have been determined to pose a threat to the security of the institution and are considered contraband. (*Id.*). Inmate property may be searched randomly or for good cause. (*Id.*, citing Program Statement ("P.S.") 5521.05). Found contraband is confiscated and the inmate is provided with a confiscation form. (*Id.*, citing P.S. 5580.07). An inmate may receive disciplinary action for possession of contraband. (Doc. 16-1, Attach. 5, BOP Mem.). If an inmate is sending material for the possible filing of a false lien or disclosing unauthorized personal information, the action may be referred for prosecution. (*Id.*).

---

[4] *See United States v. Neal*, 776 F.3d 645, 654 (9th Cir. 2015) ("Section 1521 [18 U.S.C. § 1521] was enacted ... as part of the Court Security Improvement Act of 2007. ... The statute prohibits the filing of, the attempting to file, or the conspiring to file documents of the sort that could create false liens and encumbrances against federal employees.").

### C. Factual Background

On July 5, 2011, Special Investigative Services ("SIS") determined that Petitioner attempted to send two pieces of mail which contained UCC financial documents and instructions on how to file a UCC lien. (Doc. 16-1, Attach. 6, Incident Report #2182191 dated July 5, 2011). The documents contained unauthorized personal information and were confiscated. (*Id*. & Doc. 16-1, Attach. 3, Goddeau Mem.). The documents included a UCC financial statement, a bonded promissory note, a Notary's certification of service, a due presentment under notary seal settlement, a private administrative remedy, an unconditional acceptance, an international bill of exchange, a 1099 OID form, a 1040V form, and annual summary and transmittal of US information returns. (Doc. 16-1, Attach. 3, Goddeau Mem.). A BOP staff member administratively charged Petitioner with a Code 305 prohibited act, possession of anything not authorized for retention or receipt by an inmate and not issued to him through regular channels. (Doc. 16-1, Attach. 6, Incident Report). The Incident Report was delivered to Petitioner on July 5, 2011. (*Id*.). A prison official investigated the incident, concluded that Petitioner had been properly charged with the Code 305 prohibited act, and referred the incident to the UDC. (*Id*. at 2). Petitioner was advised of his right to remain silent and afforded an opportunity to make a statement. (*Id*.).

Petitioner appeared before the UDC on July 12, 2011. (*Id*. at 1). Petitioner contended that SIS staff had reviewed the documents and given "them back to him to mail out" and that SIS staff "missed [the documents] the first time." (*Id*.). The UDC referred the charges to the DHO. (*Id*.).

On July 12, 2011, the UDC gave Petitioner Notice of a Hearing before the DHO. (Doc. 16-1, Attach. 7, Notice of Discipline Hearing before the DHO). Petitioner requested the presence of a staff representative, Lieutenant Halladay, and a witness, M. Wagner (AWO), who would testify that Petitioner told him that SIS staff reviewed the documents and returned them to Petitioner. (*Id*.). Petitioner was provided with notice of his rights at the discipline hearing. (Doc. 16-1, Attach. 8, Inmate Rights at Discipline Hearing).

Petitioner appeared before the DHO on September 1, 2011. (Doc. 16-1, Attach. 9,

1 DHO Report for Incident Report #2182191). Petitioner waived his right to a staff
2 representative and denied the charges, reiterating that the materials had been returned to him.
3 (*Id*.). Petitioner proceeded without the witness who was present at the hearing. (*Id*. at 1-2).
4 The DHO found that Petitioner committed the prohibited act as charged, that is, possession
5 of anything not authorized, basing his decision on the reporting officer's written statement
6 and the SIS investigation. (*Id*. at 3). The DHO considered Petitioner's statement that
7 Lieutenant Halladay had returned the documents to him but gave greater weight to the
8 reporting officer's statement that the confiscated documents were not the same documents
9 as those previously returned and that Petitioner possessed the UCC lien documents. (*Id*.).
10 The DHO sanctioned Petitioner by imposing fifteen days of disciplinary segregation,
11 disallowance of thirteen days good conduct time, and 180 days of visiting restriction. (*Id*.).
12 The DHO set forth his reasons for the action and notified Petitioner of his appeal rights.
13 (*Id*.). The DHO report was delivered to Petitioner on September 2, 2011. (*Id*. at 4).

**III.    Discussion**

Petitioner seeks the restoration of good time credits and of his prior status. Petitioner contends that "good time credits implicate the length of his sentence." (Am. Pet. at 5).

Federal prisoners have a right by statute to good time credits. *See* 18 U.S.C. § 3624. Habeas corpus jurisdiction is available under § 2241 "for a prisoner's claims that he has been denied good time credits without due process of law." *See Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989). "[A] claim challenging prison disciplinary proceedings is cognizable" under the federal habeas statute "only if it will 'necessarily spell speedier release' from custody, meaning that the relief sought will either terminate custody, accelerate the future date of release from custody, or reduce the level of custody." *Nettles v. Grounds*, 788 F.3d 992, 995 (9th Cir. 2015) (citing, *inter alia*, *Skinner v. Switzer*, 562 U.S. 521 (2011)). Respondent asserts that Petitioner has a projected release date of November 29, 2024 "via Good Conduct." (Answer at 2, citing Doc. 16-1, Attach. 2). Respondent does not contend that Petitioner's sentence is not affected by the loss of good time credits. The Court has jurisdiction over Petitioner's § 2241 Amended Petition.

1    To satisfy the basic requirements of due process in the context of prison discipline
2 proceedings, prison officials need only provide an inmate with: (1) a written notice of the
3 charge at least 24 hours prior to any hearing; (2) an opportunity to call witnesses and present
4 documentary evidence in his defense when such action will not be unduly hazardous to
5 institutional safety or correctional goals; and (3) a written statement by the factfinders as to
6 the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418
7 U.S. 539, 565-66 (1974).

8    Due process further requires only that disciplinary findings be supported by "some
9 evidence" in the record. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445,
10 454-55 (1985). This standard is met when "there is any evidence in the record that could
11 support the conclusion reached by the disciplinary board." *Id.*, at 455-56. While this is a
12 "minimally stringent" standard, "there must be some indicia of reliability of the information
13 that forms the basis for prison disciplinary actions." *Cato v. Rushen*, 824 F.2d 703, 705 (9th
14 Cir. 1987). The "some evidence standard" does not require the court to examine the entire
15 disciplinary record, independently assess the credibility of witnesses, or reweigh the
16 evidence. *Hill*, 472 U.S. at 455.

17   Petitioner does not contend he was not given the required notice or that he was not
18 provided with a written statement by the DHO regarding the evidence relied upon and the
19 reasons for the disciplinary action. Petitioner contends that the DHO misrepresented the fact
20 that "AW Porter" was present at the hearing and that the hearing went forward without
21 Petitioner calling "AW Porter" as a witness. (Am. Pet. at 5). The DHO Report shows that
22 "A.W. Wagner" was called and appeared as a witness but Petitioner proceeded without
23 calling any witnesses. (Doc. 16-1, Attach. 9 at 1-2).

24   Petitioner argues that had "AW Porter bee[n] present, the outcome of the hearing may
25 have been different." (Am. Pet. at 5). Petitioner specifically contends that after receiving the
26 Incident Report, he reported the incident to Warden Perdue who instructed him to alert AW
27 Porter of the matter. (*Id.* at 5). He claims that Warden Perdue and AW Porter assured him
28 the matter would be resolved. (*Id.*). He further contends that AW Porter "could have been

- 7 -

questioned as to the validity of Mrs. Halladay's omission and or oversight of the property in question. He could have asked that this matter be expunged. Who's to say otherwise." (*Id.*). Based on Petitioner's allegations, Petitioner allegedly did not discuss the matter with AW Porter until after Petitioner received the Incident Report. Any information about the matter possessed by AW Porter would have been based on what Petitioner told him. Petitioner has not shown how the witness' testimony would have changed the outcome.

The record shows that the DHO considered Petitioner's assertion that the Lieutenant returned the unauthorized documents to him. The DHO gave greater weight to the reporting officer's statement that the confiscated documents were not the same as those previously returned and to Petitioner's possession of the UCC lien documents. "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Hill*, 427 U.S. at 457. The reporting officer's testimony can constitute sufficient evidence to support the disciplinary finding. *Bostic*, 884 F.2d at 1271. To the extent that Petitioner contends that his due process rights were violated because the DHO rejected his claim that the unauthorized documents were mistakenly returned to him and he was trying to rid himself of the documents (Doc. 22 at 1-2, 5), the Court does not independently assess the credibility of witnesses or reweigh the evidence. Petitioner does not dispute that he possessed the documents or that they were considered contraband. (Doc. 22 at 5). Petitioner's discipline determination is supported by "some evidence"and the requirements of due process were satisfied.

**IV.     Recommendation**

For the foregoing reasons, the Magistrate Judge recommends that the District Court after its independent review deny the Amended Petition Under 28 U.S.C. § 2241 For A Writ Of Habeas Corpus By A Person In Federal Custody (Doc. 6).

Pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure and LRCiv 7.2(e) of the Rules of Practice of the U.S. District Court for the District of Arizona, any party may serve and file written objections within **Fourteen (14) Days** after being served with a copy of this Report and Recommendation. A party may respond to

1  another party's objections within **Fourteen (14) Days** after being served with a copy.
2  Fed.R.Civ.P. 72(b)(2). No replies to objections shall be filed unless leave is granted from
3  the District Court to do so. If objections are filed, the parties should use the following case
4  number: **CV-13-00270-TUC-RCC**.

5      Failure to file timely objections to any factual or legal determination of the Magistrate
6  Judge may be deemed a waiver of the party's right to de novo review of the issues. *See*
7  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

8      DATED this 25th day of April, 2016.

_____
**CHARLES R. PYLE**
UNITED STATES MAGISTRATE JUDGE